[No. 21438. Department Two. March 11, 1929.]

M. A. Benson et al., Appellants, v. F. W. Wonn, et al., Respondents.[1]

*Alexander & Bundy,* for appellants.
*John M. Boyle, Jr.,* for respondents.

Main, J.—Generally stated, the purpose of this action was to fix and determine the respective interests of the various parties to the proceeding in certain property. The cause came on for trial before the court, without a jury, and at the conclusion of the plaintiffs' evidence a motion to dismiss was sustained. From the judgment entered, dismissing the action, the plaintiffs Ed Maines and V. Gattavara and the defendant Howard Jones appealed.

The facts are not in serious dispute, and may be summarized as follows: The Sundown Lumber Company, a corporation, owned and operated at Puyallup, in Pierce county, a box factory and veneer plant. Upon the property owned by the corporation, there was a $10,000 mortgage. In addition to the mortgage, there were unsecured claims in approximately the sum of $40,000. One of the creditors brought an action,

[1]Reported in 275 Pac. 77.

and a receiver was appointed, who in due course was offering the property for sale. The creditors, or some of them, were not satisfied with the bids that were being received for it. A meeting of the creditors was called, with the result that the appellants, Ed Maines, V. Gattavara and M. A. Benson, were named as trustees for the creditors. These trustees then sent notice to all the creditors, with two forms of assignment, one assigning their claims to the trustees under an arrangement that they had made with F. W. Wonn to take over the property and operate it, and out of the profits pay seventy-five per cent on the claims. The other form of assignment was to Wonn individually, and the claimants signing this form were to receive twenty per cent from him. About one-half of the claims were assigned to the trustees, and the other half to Wonn. The trustees then filed a written declaration of trust, and entered into a contract with Wonn by which he was to operate the property, do certain things which it is unnecessary here to mention, and out of the profits pay seventy-five per cent upon the claims which had been assigned to the trustees. The receiver conveyed the property to the trustees for the amount of the unsecured claims. Wonn went into possession of the property, and arranged for an extension of the mortgage for a period of time. No profits were made, and the extended time of the mortgage elapsed. The mortgagee brought an action to foreclose and the property was sold, and was purchased by the mortgagee for the amount of the debt, interest and costs. The contract with Wonn contained a provision that he might terminate it upon thirty days' notice, which he had done prior to the sale of the property under the mortgage forclosure. Soon after the property was sold, Wonn redeemed the same by paying to the mortgagee the amount of his bid.

136

The question for determination is what rights, if any, the trustees and beneficiaries for whom they are acting have in the property. When the receiver conveyed the property to the trustees, the legal title was vested in them subject to the mortgage. The equitable title was in the creditors, whose claims had been satisfied by conveying the property to the trustees. As above indicated, Wonn had purchased about one-half of these claims, and thereby had become subrogated to their rights. Whether he redeemed from the foreclosure as a judgment creditor or as a successor in ownership, is not material. Having an equitable interest in the property, Wonn had a right to redeem. In redeeming, however, he would not extinguish the equitable interest of the creditors represented by the trustees. Neither could his redemption lift the legal title from the trustees and place it in himself. After Wonn redeemed, he became substituted in equity in place of the mortgagee, and is entitled to hold the land, as if the mortgage existed, until the trustees or the creditors for whom they were acting pay their respective shares of the encumbrance. Wonn, by redeeming, became in effect the assignee of the mortgage, and if the trustees or the creditors for whom they are acting do not pay their *pro rata* share, he may, in a proper proceeding, obtain the whole title to the land. In 42 C. J., p. 453, it is said:

"Where one joint owner or tenant in common of mortgaged land redeems the whole estate from the mortgage or from a foreclosure sale, he is regarded as having a lien in the nature of an equitable mortgage upon the respective shares of the property belonging to his co-tenants for proportional shares of the amount paid."

The cases of *McSorley v. Lindsay*, 62 Wash. 203, 113 Pac. 267, and *Hubbard v. Ascutney Mill Dam Co.*, 20 Vt. 402, 50 Am. Dec. 41, are to the same effect.

In this proceeding, the trial court should have fixed and determined the respective interests of the various parties in the property, and determined the amount which the trustees or the beneficiaries for whom they were acting should pay, as their *pro rata* share of the mortgage indebtedness.

The judgment will be reversed, and the cause remanded for further proceedings.

MILLARD, FULLERTON, PARKER, and FRENCH, JJ., concur.